UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                    :
L. ALAN DAFT, *et al.*                              :     CASE NO. 5:06-cv-1876
                                                    :
            Plaintiffs,                             :
                                                    :
vs.                                                 :     OPINION & ORDER
                                                    :     [Resolving Doc. 45]
ADVEST, INC. *et al.*                               :
                                                    :
                                                    :
            Defendants.                             :
                                                    :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, the Court considered whether Defendants' denial of the Plaintiffs' claim for benefits was arbitrary and capricious and whether Account Executive Non-Qualified Defined Benefit Plan ("Plan") was a "top hat" plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The court found both the plan did not qualify as a top hat plan under ERISA's vesting requirements and also found that the denial of the claim was arbitrary and capricious. [Doc. 42]. The Defendants have filed a motion to reconsider making several arguments that the plan is a "top hat" plan, and therefore not subject to ERISA's vesting requirements. [Doc. 45]. For the reasons stated below, the Court **DENIES** the motion to reconsider.

**I. Background**

Advest, a securities brokerage firm, established the Plan in 1992 for a "select group of highly compensated account executives . . . to ensure that the overall effectiveness of Advest's

Case No. 5:06-cv-1876
Gwin, J.

compensation program would attract, retain and motivate qualified account executives." [Doc. 36, Ex. 2 at AR 67]. The Plan designates a committee to act as administrator and gives it overall responsibility for administrating the plan, including the power to "construe" the Plan and "determine all questions arising in [its] administration." [Doc. 36, Ex. 2, §§6.1, 6.2(b) & (c)].

The Plan limits eligibility for participation in it to account executives who meet a certain threshold of gross commissions. [Doc. 36, Ex. 2, §2.1 at AR 68]. In 1992, the threshold was $200,000, and that threshold has increased each year, reaching $275,000 in 2005. [Doc. 36, Ex. 2, §1.6 at AR 67]. Plan participants accrued cash benefits based on their commissions above the threshold level for their years of employment. [Doc. 36, Ex. 2, § 3.3 at AR 69].

In November 2006, the Plaintiffs applied for benefits to the Committee. [Doc. 36, Ex. 1, Sub Ex. 1-6 at AR 1-37]. In support of this claim, the Plaintiffs made two independent arguments. Plaintiffs first made a statutory argument--they argued that a denial of accrued benefits violates ERISA, including 29 U.S.C. §1053, 29 U.S.C. §1369, 29 U.S.C. §1082(c)(8)(C); 29 U.S.C. §§1104 & 1109, and civil liability under 29 U.S.C. §1132. [Doc. 27] ("26. The AE Plan violated the nonforfeitability requirements of ERISA which provides that participants must have a nonforfeitable right to 100% of their accrued benefits under an employee pension benefits plan after no more than 7 years of service to the employer."). The Defendants responded that the plan was a "top hat" plan, and therefore not subject to those statutory requirements.

The Plaintiffs also made a second argument separate from the statutory argument: for various reasons, the Committee abused its discretion in denying benefits. Included within these many arguments, the Plaintiffs said that the Committee abused its discretion because the Plan did not qualify as a top-hat plan.

Case No. 5:06-cv-1876
Gwin, J.

After examining all materials submitted by the parties, this Court found that many of the Plaintiffs arguments failed. However, the Court found the Plan did not qualify under the statutory prerequisites for exemption from ERISA's vesting requirements. This Court also found the Committee decision, to the limited degree that the Committee provided any analysis, was arbitrary and capricious and wrong when it found the Plan was not a "top hat" plan. [Doc. 42].

## II. Legal Standard

A motion for reconsideration is considered a motion to alter or amend judgment under Fed. R. Civ. P. 59(e). *Smith v. Hudson*, 600 F.2d 60, 62-63 (6th Cir. 1979). Such a motion is extraordinary and sparingly granted. *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995). A court may grant a motion to amend or alter judgment if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (citation omitted). When a party views the law in a light contrary to that of this Court, the party's "proper recourse" is not by way of a motion for reconsideration but "appeal to the Sixth Circuit." *Dana Corp. v. United States,* 764 F. Supp. 482, 489 (N.D. Ohio 1991).

## III. Analysis

The Defendants argue that (1) the Court decided top hat plan issues that were not raised by

Case No. 5:06-cv-1876
Gwin, J.

Plaintiffs in their application for benefits and therefore these issues were outside the scope of the Plaintiffs' appeal; (2) the Court made factual findings based on evidence outside of the administrative record; (3) the Court erroneously deemed facts alleged in the amended complaint as admitted by defendants; (4) the Court made material errors of fact and law in ruling on the top hat plan status; (5) the Court should vacate its order and either uphold the committee decision, remand the top hat issue to the Committee to develop the facts in a reopened administrative record, or allow the parties to submit additional evidence.

As an initial matter, the Court returns to first principals. In this case, the Plaintiffs filed an Amended Complaint said that the Plan Administrator's denial of benefits abused its discretion for various reasons, including the Plan Administrator's finding that the Plan was a top-hat plan. The Plaintiffs filed a separate claim that was independent of any abuse of discretion claim. With this second claim, the Plaintiffs said that the denial of benefits was a breach of the ERISA minimum vesting standards, fiduciary duty, disclosure obligations, and minimum funding standards.

With their motion for reconsideration, the Defendants complain that the Court's decision did not confine itself to the issues raised by Plaintiffs in their application to the Plan Administrator for benefits. [Doc. 45 at 1]. This argument wrongly suggests that Plaintiffs never made the ERISA vesting argument to the Plan Administrator.[1] But, of course, the Court need determine the issues raised in the case. And in this case, the Plaintiffs clearly made a claim that Defendants violated

---

[1] Actually, the Plaintiffs did make an ERISA vesting argument to the Administrator. In their submission to that Administrator, the claimants argued:
"Any denial of benefits to the Participants constitutes a violation of ERISA including: (1.) a violation of 29 U.S.C. § l053 governing minimum vesting requirements including nonforfeitability requirements which requires that participants must have a nonforfeitable right to 100% of their accrued benefits under an employee pension benefits plan after no more than 7 years of service to the employer,"
[Doc. No. 36, Ex.1 at AR 12]

-4-

Case No. 5:06-cv-1876
Gwin, J.

ERISA's minimal vesting requirements. With the Amended Complaint, Plaintiffs filed a distinct statutory claim. For example, the Plaintiff Amended Complaint alleged:

> 26. The AE Plan violated the nonforfeitability requirements of ERISA which provides that participants must have a nonforfeitable right to 100% of their accrued benefits under an employee pension benefits plan after no more than 7 years of service to the employer. Contrary to this ERISA requirement, the AE Plan did not conditionally vest until 10 years after a broker became a participant in the Plan, and even then they remained subject to forfeiture under certain limited conditions, even after participants reached the qualifying age of 65 or the early qualifying age. Defendants have relied upon the forfeiture provisions of the AE Plan to deny Plaintiffs their accrued benefits in violation of ERISA.
>
> * * *
>
> FOURTH CAUSE OF ACTION
> (Breach of ERISA Minimum Vesting Standards)
>
> 70. In violation of 29 U.S.C. §1053, accrued benefits under the AE Plan did not conditionally vest until 10 years after a broker became a participant in the AE Plan, and even after 10 years, they remained subject to forfeiture even after participants reached the qualifying age of 65 or the early qualifying age. The vesting schedule and forfeiture provisions of the AE Plan violated ERISA's vesting requirements and are unenforceable.
>
> * * *
>
> 72. As a result of the Defendants' conduct, Plaintiffs have been denied their accrued benefits in violation of the minimum vesting standards of ERISA and pursuant to 29 U.S.C. § 1132(a)(1)(B) and §1132(a)(3), Plaintiffs are entitled to enforce their rights under ERISA to recover their accrued benefits.

[Doc. No. 27, First Amended Complaint at ¶¶ 26, 70, 72].

Moreover, the parties' briefing dealt with Plaintiffs statutory claims as well as their claim that the Administrator abused his discretion. Plaintiffs opening brief argued: "The Committee's denial of benefits to the Plaintiffs constitutes a violation of ERISA including: (1) a violation of 29 U.S.C. §1053 governing minimum vesting requirements including nonforfeitability requirements which requires that participants must have a nonforfeitable right to 100% of their accrued benefits under an employee pension benefits plan after no more than 7 years of service to the employer, yet, the Plan

Case No. 5:06-cv-1876
Gwin, J.

includes a 10 year vesting;" [Doc. 35 at 19]. The Plaintiffs made a statutory vesting claim. The Court's opinion and order addressed that separate claim.

This Court considered both issues separately. On the denial of benefits claim, the Court found *both* that the administrator's denial of benefits was arbitrary and capricious, and under a *de novo* standard of review the plan was not a top hat plan. The Court found that the *de novo* standard should apply to the Committee decision regarding the top hat status of the plan as it was a decision of statutory interpretation, but the Court also considered this determination under the arbitrary and capricious standard. The Court further considered the statutory claims and found the plan was not a top hat plan.

In making its decision on both issues, the Court was, in part, influenced by the fact that the Defendants bore the burden to show that they qualified for the narrow top-hat exemption from ERISA's statutory vesting requirements. As the Court had a four part test, it engaged in an analysis of what evidence was before it. Defendants enjoyed the burden of showing the Plan qualified for the top-hat exemption. Having that burden, the Defendants should have insured that any evidence helpful to its argument that the exemption applied was before the Court.

The Court will consider the Defendants' arguments on both the statutory claims and the denial of benefits claim in turn.

**I. Statutory Claims**

The Defendants argue that this Court's order analyzing whether the Plan participants: 1) constituted a sufficiently small percentage of the workforce at Advest; and 2) were "highly compensated" individualswent beyond the scope of appropriate review as none of these issues were addressed by the Committee in its decision. The Court disagrees. Repeating, Plaintiffs' Fourth

Case No. 5:06-cv-1876
Gwin, J.

Cause of Action in their Amended Complaint alleged a "[b]reach of ERISA Minimum Vesting Standards."  The top-hat exemption was before the Court.

The Defendants argue the Court's finding on the statutory claims was wrong for several reasons.  They argue that the Court based its decision on bargaining power–an issue not argued in the case, made findings not supported by the record, considered improper evidence, and finally they make a belated attempt to meet their original burden of proof by coming forth with evidence.  The Court will consider each issue in turn.

A. Bargaining Power

The Defendants criticize the Court's analysis of bargaining power in making its determination.  In the briefing by the Defendant, it was unclear whether the Defendants' assertion that the plan was a top hat plan was based on whether the employees were "highly compensated" or whether they were "management."  For that reason, the Court considered both.  However, any language about bargaining power was simply restating that the Sixth Circuit test, set out in *Bakri*, which the Sixth Circuit described as "the select group test."  Under that test, courts determine whether "members of the group have positions with the employer of such influence that they can protect their retirement and deferred compensation expectations by direct negotiations with the employer" through consideration of the four factors. *Bakri*, 473 F.3d at 679.  The Court had no evidence of bargaining power, nor did it consider it a central issue in the case.  Because the Court did not actually consider any evidence of bargaining power, any language to that effect in the opinion is essentially surplusage–specifically, the Court found no evidence on either of the qualitative factors, and that led the Court to note that lack of evidence favored the finding that the Defendants had failed to meet their burden under the select group test.

Case No. 5:06-cv-1876
Gwin, J.

B. Findings Based on Evidence Outside the Record

The Court made no factual findings based on evidence outside the record. The Court noted the gross commissions threshold was low. This was based entirely on the record. Specifically, the Court found:

> The Court first considers the percentage of the workforce invited to join the plan. Advest employs a large number of brokers, brokers represent thirty percent of the company's employees. [Doc. No. 36, Ex. 1, 20] (retail sales force comprises 500 financial advisors). All of these 500 brokers were eligible to participate in the Plan if they met the low gross commission threshold and in 1993, half of these financial advisors met commissions requirement and participated in the Plan [Doc. No. 36, Ex. 5] ("As of October 19, 1993, 255 employees were participating" in the Plan). Brokers automatically became Plan participants if they met the commission threshold for one year, and they continued to participate regardless of their commissions in later years. Thus, all account managers were eligible to participate if they met the low gross commission requirement, and more than 50% of account managers actually participated. Of Advest, Inc.'s total work force, at least 30% were eligible to participate in the Plan and more than 15% actually participated. Given the broad offer of participation to account managers, the low gross commissions needed to qualify for participation, and the high percentage of workers that fill the position of account managers, the Court finds that the Plan was not directed to a "select group."

[Doc. 42, p. 20]. The Court's determination that the gross commission threshold was "low" was a reasonable inference based on the information in the record that more than half the account managers participated in the plan. The Court reasonably inferred this was, at best, an average commission.

Further, even if the Court had not determined the gross commission was low, the Court would still find the plan was not directed at a "select group." The broadness of participation among account managers and the high percentage of workers that fill that position in conjunction with the Defendant bearing the burden of proof, leads to that conclusion.

C. Facts Deemed Admitted

On November 13, 2006, the Court granted Plaintiffs leave to file an amended complaint

Case No. 5:06-cv-1876
Gwin, J.

within 20 days. [Doc. 22]. Two days later, the Court stayed the case so that the Plaintiffs could exhaust their administrative remedies. The case became active again with the Plaintiffs filing of a second amended complaint–the complaint the Court had granted leave for them to file. The Defendants failed to answer this complaint. Based on this, the Court noted that the Defendants did not deny that more than half of the Advest Account Managers were participants in the plan. The Defendants argue this an error.

The Court will not consider the Defendants argument on this point, as the Court had evidence in the administrative record that stated more than half of Advest Account Managers were plan participants. The Court cited that evidence in determining approximately 15% of the Account Managers were plan participants. Specifically, the retail sales force comprises of approximately 500 advisors, [Doc. 36, Ex. 1, 20 at AR 16, 404] and "as of October 19, 1993, 255 employees were participating" in the Plan. [Doc. 36, Ex. 5 at AR 93]. As such, the Defendants were in no way prejudiced by the Court's considering this fact admitted. The administrative record revealed that about half of the managers were plan participants.

Further, the Court notes that the Defendants were aware that an amended complaint had been filed. On June 19, 2007, the Court denied the Defendants' previous motion to dismiss or in the alternative for summary judgment as moot *because* the Plaintiffs' had filed an amended complaint. [Doc. 33]. The Court further established a briefing schedule on the basis of the complaint at a status conference. The Court, therefore, finds the Defendants' argument that it was unaware the complaint was considered properly filed to be not credible.

D. New Evidence

The Defendants now put forth new evidence regarding whether the plan was a top hat plan.

Case No. 5:06-cv-1876
Gwin, J.

The Defendants had the burden of bringing forth this evidence when the issue was first under consideration. This evidence could have been discovered and brought forth with due diligence. As such, the Court need not consider it. *McConocha*, 930 F. Supp. at 1184.

The Defendants now offers evidence that the *average* annual compensation of Plan participants between 1992 and 2002 ranged from 2 to 4 times the average annual compensation of all Advest employees. [Doc. 45, Ex. 1 at ¶ 8]. Again, the Court based its decision regarding whether the plan participants were "highly compensated" on the lack of evidence and burden of proof.

Further, averages are not as useful for determining whether the plan participants count as "a select group of highly compensated employees." More relevant would have been a comparison of the salary earned by employees minimally qualifying for participation in the Plan against the average salary of all Advest employees. In this Court's opinion, this Court made it abundantly clear that the proper comparison was between the minimally qualifying participant and the universe of all Advest employees:

> For obvious reasons, the Committee avoids answering the central questions regarding this low commission threshold: 1) how much does an account manager responsible for $200,000 in *gross* commissions receive in income; and 2) is the amount received in income by an account manager who just meets the threshold sufficient to qualify an as a highly compensated employee? For example, if an account manager having $200,000 in gross commissions earns only $40,000, the commission threshold would not limit Plan participation to "highly compensated employees." These questions are central to any consideration of whether the Plan meets the top-hat plan requirements and the Committee's failure to answer them is telling.

[Doc. 42 at 17]. That Defendants offer no evidence to answer this question is telling.

To consider averages and not the minimum salary would not protect the Congressional goal underlying the creation of top hat plan exemptions. Specifically, an average can mask wide divergence in compensation and show little regarding whether participation is restricted to highly

-10-

Case No. 5:06-cv-1876
Gwin, J.

compensated individuals. An example- upon being deposed from Merrill Lynch, former chair Stanley O'Neill received a severance package of $159 million. If each of the ten Plaintiffs earned $100,000, the average compensation of O'Neill and the ten plaintiffs would be near $15 million. But such average figure shows nothing regarding whether the ten were highly compensated. The evidence offered by Defendant fails to suggest any manifest injustice and is insufficient to reconsider this Court's judgment.

Rather than the average salary, the range of salaries is more useful. *Carrabba v. Randalls Food Markets, Inc.*, 38 F. Supp. 2d 468, 477 (N.D. Tex. 1999) *cited in Bakri*, 473 F.3d 677; *see also Starr v. JCI Data Processing, Inc.*, 757 F. Supp. 390, 394 (D. N.J. 1991)(considering the range of salaries and not the averages); *Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1253 (D. Md. 1983) (noting the potential of averages to skew the numbers and considering median salaries). As *Carraba* was cited in the case that laid out the Sixth Circuit test, the Court considers it more persuasive.

As discussed above, the Court did not consider evidence of bargaining power, rather it applied the select group test–looking at four factors. The Court does not consider the evidence the Defendants put forth as evidence of bargaining power relevant to any of the four factors and will not consider it.

Even if the Court were to consider the evidence the Defendants belatedly bring to its attention, the Court would not find the plan is a "top hat' plan. The Defendants put forth evidence that the percentage of employees participating in the plan was actually 12.87%, rather than the 15%

-11-

Case No. 5:06-cv-1876
Gwin, J.

the Court determined based upon the administrative record.[2] [Doc. 45, Ex. 1]. Even if the plan did constitute 12.78% of the workforce, that is a significant number of employees and it would not change the analysis in this case. The Second Circuit considers 15% to be at or near the highest percentage a "top hat" plan could be. *Demery,* 216 F.3d at 289. As discussed above, however, 15% or less could not qualify as a select group based on the qualitative factors, even in the Second Circuit. *Id.*

The Sixth Circuit considers both qualitative and quantitative factors–numerosity being only one of them. Twelve and eighty-seven hundredths of a percent is not so small that it would automatically count as a "select group." While some courts have found plans to be top hat plans when the employee participation rate was between 10% and 15%, this is not a bright line test. *See Alexander v. Brigham & Women's Physicians Org., Inc.*, 467 F. Supp. 2d 136, 144 (D. Mass. 2006) (collecting cases). In this case, in the absence of other evidence, this alone does not establish the plan as a "top hat" plan.

For the reasons discussed above, the Court finds no newly discovered evidence, clear error of law, or manifest injustice that would cause it to grant the motion to reconsider. *See Gencorp, Inc.,* 178 F.3d at 834.

**II. Denial of Benefits Claim**

The top hat issue was also presented to the Plan Administrator. And as discussed in this

---

[2] The Court notes that this document lists the number of plan participants in 1993 as 189, this number is only 75% the number of plan participants reported in the administrative record. The administrative record reflects Defendant reported to the Department of Labor that 255 employees were participating in the plan at issue here. [Doc. 36, Ex. 7 at AR 93, Doc. 36, Ex. 2 at AR 67 (a copy of the plan, listed it as the Account Executive NonQualified Benefit Plan)]. The Defendants argue that 255 was a preliminary number and 189 is more accurate. Setting aside the disparity between the two numbers, the Court will not credit evidence that contradicts the administrative record in deciding whether the Committee's decision was arbitrary and capricious and legally incorrect. The Committee had the 255 number.

Case No. 5:06-cv-1876
Gwin, J.

Court's opinion, the Plan Administrator gave some, albeit incomplete consideration of the issue. The Committee's failure to address these issues formed some of the basis of the decision that the Committee acted arbitrarily and capriciously. Failing to provide any meaningful analysis of the top-hat issue, the Committee simply said the Plaintiffs had failed to prove the plan was *not* a top hat plan. But the burden of establishing that a plan fits the "top hat" exclusion is on the party asserting that it is a "top hat" plan. *See, e.g., Alexander v. Brigham & Women's Physicians Org., Inc.*, 467 F. Supp. 2d 136, 142 (D.Mass. 2006). In part, the the Court found the Committee had acted arbitrarily and capriciously in not considered the necessary factors and had shifted the burden of proof onto the Plaintiffs. Specifically, the decision states: "Claimants have not alleged or established that the account executives who meet the eligibility standards set forth in the Plan, and, as a result, participate in and accrue benefit under the Plan do not qualify as a 'select group of highly compensated employees.' [Doc. 36, Ex. 27, p. 13]. As discussed in this Court's earlier ruling, however, the Defendants bore that burden. [Doc. 42, p. 18]. Further, the Court's analysis of these factors was necessary to determine the validity of the Plaintiff's claims–even if only to determine the Defendants had failed to bear their burden.

The Court also noted that in this situation, the administrator was making a conclusion of law, interpreting ERISA and not the underlying plan. In that respect, the Court was doubtful that the administrator was entitled to any deference on the top hat issue. *See Rumpke v. Rumpke Container Serv.*, 240 F. Supp. 2d 768, 771-72 (S.D. Ohio 2002) ("Courts give no discretion to administrators for legal determinations."). Nevertheless, the Court found the Administrator's cursory treatment of the issue was arbitrary and capricious.

For these reasons, the Court finds no clear error of law or manifest injustice that would cause

Case No. 5:06-cv-1876
Gwin, J.

it to grant the motion to reconsider as to the Defendants' denial of benefits claim. *See Gencorp, Inc., 178 F.3d at 834*.

**III. Alternative Remedies**

A. Remand to the Committee

The Defendants contend that the Court should remand the top hat question to the Committee. They cite cases where the Sixth Circuit suggested this would be appropriate when the plan administrator failed to make adequate findings of fact, to consider certain evidence, or relied on provisions not in the plan documents. *See Williams v. International Paper Co., 227 F.3d 706, 715 (6th Cir. 2000)* (no remand where the Committee had the evidence before it); *University Hosps. Of Cleveland v. Emerson Elec. Co. Benefit Plan, 1994 U.S. App. LEXIS 37205, *5, 1994 WL 714326 (6th Cir. Dec. 22, 1994)* (remand for reliance on the provisions outside the plan documents). The Court understands these cases to suggest that a remand is necessary to gain the benefit of a full decision by the administrator.

But such a remand is unnecessary when the plan administrator's review was arbitrary and capricious. *See Williams, 227 F.3d at 715* (listing cases where no remand was necessary because the administrator's review was arbitrary and capricious). That is precisely what the Court found here–the Committee failed to engage in any real analysis on an issue where the Defendants had the burden of proof. Instead, as discussed above, the Committee's decision makes clear that the Committee viewed the claimants as having the burden of proof. The Committee's shifting the burden of proof to the claimants was arbitrary and capricious. A remand would therefore be improper. *See Williams, 227 F.3d at 715*. Finally, Plaintiffs make statutory claims that would remain unaffected by any remanded proceedings.

-14-

Case No. 5:06-cv-1876
Gwin, J.

B. Re-Open the Issue in this Court

The Defendants finally argue that this Court should give them the opportunity to submit evidence in this forum. They argue the Court should grant them leave to answer the Plaintiffs' amended complaint and proceed from there. The Defendants further argue that they should have the opportunity to submit evidence. The Court notes, however, that the Defendants had the opportunity to submit evidence. The complaint was properly filed on May 9, 2007. It asserted two claims. The parties' briefs dealt with both claims. As described above, the Defendant filed a motion for reconsideration and attached evidence. Despite knowing that the determination of whether the Plan was limited to highly compensated individuals was most affected by comparing the salary of those minimally qualifying to participate in the Plan against the average employee salary, Defendants offer nothing. Instead, they compare the average salary of participants with all employees, a comparison they knew the Court found unimportant. The Court, therefore, finds no prejudice to the Defendants.

Based on the forgoing, the Court finds no clear error of law or manifest injustice in the disposition of the statutory claim in this manner, and will not grant the motion to reconsider. *See Gencorp, Inc.,* 178 F.3d at 834.

### IV. Conclusion

For the above stated reasons, the Court **DENIES** the Defendants' motion to reconsider. IT IS SO ORDERED.

Dated: January 18, 2008               s/     *James S. Gwin*
                                       JAMES S. GWIN
                                       UNITED STATES DISTRICT JUDGE