UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------
                                          :
L. ALAN DAFT, *et al.*,                   :        CASE NO. 5:06-cv-1876
                                          :
            Plaintiffs,                   :
                                          :
vs.                                       :        OPINION & ORDER
                                          :        [Resolving Doc. Nos. 64 & 66]
ADVEST, INC. *et al.*,                    :
                                          :
                                          :
            Defendants.                   :
                                          :
-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    In this employee benefits case, the Court previously considered whether the Defendants'

denial of the Plaintiffs' claim for benefits was arbitrary and capricious and whether the Account

Executive Non-Qualified Defined Benefit Plan ("AE Plan") was a "top hat" plan within the meaning

of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The Court found

both that the Plan did not qualify as a top hat plan under ERISA's vesting requirements and also that

the denial of the claim was arbitrary and capricious.  [Doc. 42.]  Accordingly, the Court granted

summary judgment to the Plaintiffs.[1]

    Since that order, however, the parties have been unable to reach a complete agreement as to

post-judgment remedies.  Accordingly, the parties filed a joint submission, outlining four legal issues

for this Court to resolve. [Doc. 64.]  In addition, the Plaintiffs moved for an award of attorney's fees.

---

[1] A more thorough background of this case appears in this Court's November 13, 2007, opinion and order. [Doc. 42.]

-1-

Case No. 5:06-cv-1876
Gwin, J.

[Doc. 66.]  The Defendants have responded in opposition. [Doc. 68.]  On December 3, 2009, the

Court conducted a hearing on the joint submission.

>    For the following reasons, the Court rules as follows:
>
>    (1) This Court **HAS** subject matter jurisdiction over the Plaintiffs' claims.
>
>    (2) The Plaintiffs **ARE** entitled to a monetary remedy under ERISA § 502(a)(1)(B).
>
>    (3) The Plaintiffs **ARE** entitled to an award of prejudgment interest, compounded annually
>
>        at the federal rate.
>
>    (4) The Court **GRANTS** attorney's fees to the Plaintiffs in the amount of $210,125.

### I. Subject Matter Jurisdiction

At this late hour, the Defendants for the first time say that this Court lacks subject matter

jurisdiction over the Plaintiffs' claims.  Although the Defendants originally removed the case to this

Court, [Doc. 1], they now say that the AE Plan is not a pension plan covered by ERISA. [Doc. 64

at 12.]  Responding, the Plaintiffs say that this Court has already determined that the AE Plan is an

ERISA plan, that the Defendants have judicially admitted that the Plan is an ERISA plan, and that

the record indicates the Plan is covered by ERISA. [Doc. 64 at 5-11.]

As an initial matter, the Court finds that the Defendants did not confer subject matter

jurisdiction on this Court by means of a judicial admission.  Although a party can make a binding

judicial admission of fact that establishes subject matter jurisdiction, *see e.g.*, *Ferguson v.

Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 550-51 (6th Cir. 1986), a party's

admission on a question of law does not have the same effect. *See Roger Miller Music, Inc. v.

Sony/ATV Publ'g, LLC*, 477 F.3d 383, 394 (6th Cir. 2007) (holding that defendant's concession that

Case No. 5:06-cv-1876
Gwin, J.

it did not own certain copyrights under its interpretation of law, "dealt with legal conclusions, and

not matters of fact, and therefore the district court erred in concluding that the statements were

judicial admissions"); *see also MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997)

(holding that counsel did not make binding judicial admission on party's negligence because such

statements "dealt with opinions and legal conclusions, and we are thus reluctant to treat them as

binding judicial admissions").

In this case, the Defendants' "admission" in its pleadings that the AE Plan is an employee

pension benefit plan governed by ERISA is a conclusion of law.  Accordingly, that statement by

itself does not confer subject matter jurisdiction on the Court.  Nevertheless, based on the record

before it, the Court finds that the AE Plan is an ERISA pension plan.

"In determining whether a plan is an ERISA plan, a district court must undertake a three-step

factual inquiry." *Thompson*, 95 F.3d 429, 434 (6th Cir. 1996); *see also Evanoff v. Banner Mattress*

*Co., Inc.*, 526 F. Supp. 2d 810, 815-16 (N.D. Ohio 2007) (applying *Thompson* to determine whether

ERISA governed deferred compensation plan and therefore conferred subject matter jurisdiction on

court).  The *Thompson* test is threefold:

> First, the court must apply the so-called "safe harbor" regulations established by the
> Department of Labor to determine whether the program was exempt from ERISA.
> Second, the court must look to see if there was a "plan" by inquiring whether "from
> the surrounding circumstances a reasonable person [could] ascertain the intended
> benefits, the class of beneficiaries, the source of financing, and procedures for
> receiving benefits." Finally, the court must ask whether the employer "established or
> maintained" the plan with the intent of providing benefits to its employees.

*Thompson*, 95 F.3d at 434-35 (internal citations omitted).

Because the parties do not dispute that the second and third prongs of the test are met, the

issue to be decided is whether the AE Plan is within the scope of ERISA's definitions and

Case No. 5:06-cv-1876
Gwin, J.

exemptions.

ERISA § 3(2)(A) defines a "pension plan" as: "any plan . . . to the extent that by its express terms or as a result of surrounding circumstances [it]: (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A).  Largely tracking this definition, the relevant Labor Department regulations provide that the terms "employee pension benefit plan" and "pension plan" do not include: "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2 (2009).

Here, the Defendants argue that the AE Plan neither provided retirement income nor systematically deferred income to the post-employment period. [Doc. 64 at 13-14.]  Although the terms of the AE Plan provide that participants may begin to receive benefits while still employed with the company, as early as age 55, the terms of the Plan alone are not controlling. *See* 29 U.S.C. § 1002(2)(A) ("[B]y its express terms or *as a result of surrounding circumstances* . . .") (emphasis added).  Thus, in considering whether a pension plan comes within ERISA's definition, a court examines not just what the plan says, but how the plan operates.

As the Department of Labor has repeatedly noted in its advisory opinions,[2] plans which skew the distribution of benefits toward the last years of participants' careers might be considered ERISA

---

[2]Although not binding on this Court, advisory opinion letters from the Department of Labor, which administers ERISA, are entitled to respect. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *see also Caremark, Inc. v. Goetz*, 480 F.3d 779, 790 (6th Cir. 2007) (finding Department of Labor's interpretation of ERISA provision "highly persuasive").

Case No. 5:06-cv-1876
Gwin, J.

pension plans. *See, e.g.*, 1981 Op. Dep't of Labor 81-27A, 1981 ERISA LEXIS 64 (March 9, 1981);

1983 Op. Dep't of Labor 83-46A, 1983 ERISA LEXIS 14 (Sept. 8, 1983) (late-career distributions

and long payout schedule are factors to be considered in determining whether deferred compensation

arrangement is pension plan as result of surrounding circumstances); 1981 Op. Dep't of Labor 81-

16A, 1981 ERISA LEXIS 75 (Jan. 23, 1981) (ten-year payout schedule could make royalty fund a

pension plan, depending on likelihood that participants would retire or terminate employment within

that period); *see also In re Segovia*, 404 B.R. 896 (N.D. Cal. 2009) (analyzing whether stock option

plan deferred income to retirement or near-retirement age).

In this case, the AE Plan has the effect of providing retirement income to the Defendants'

employees by means of both skewing payments toward the end of participants' careers and by

providing income to employees into the retirement period.  Specifically, a participant in the AE Plan

may not receive payments until at least age 50 or 55, despite the fact that the employee has

potentially been accruing benefits for twenty years or more.  Moreover, even though many

participants begin receiving benefits while employed, the AE Plan provides for a ten-year payout

schedule. [Doc. 36-2 at § 3.2(a).]  Thus, only those employees who elected an "early qualifying age"

under the Plan would have received all of their benefits prior to retirement.

Accordingly, because the AE Plan "results in a deferral of income by employees for periods

extending to the termination of covered employment or beyond," the Court finds that it is an ERISA

pension plan.  Therefore, this Court has subject matter jurisdiction over the instant case.

## II.  Monetary Remedy Under ERISA § 502

Second, the parties dispute whether the Plaintiffs are entitled to a monetary remedy under

ERISA § 502.  Specifically, the Plaintiffs brought claims under ERISA § 502(a)(1)(B) and §

Case No. 5:06-cv-1876
Gwin, J.

502(a)(3).  The Defendants argue that because the Plaintiffs do not seek benefits due but instead seek damages based on a statutory violation, no monetary damages are available.  Further, the Defendants say that only equitable relief is available under § 502(a)(3) and that the Plaintiffs have not requested such relief.

As to § 502(a)(1), in *West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 484 F.3d 395, 405 (6th Cir. 2007), the Sixth Circuit permitted a plaintiff to recover monetary damages under ERISA § 502(a)(1)(B) for a defendant's statutory violation. The Defendants concede that *West* controls the issue here. [Doc. 64 at 22.] Accordingly, the Court finds that the Plaintiffs are entitled to monetary damages under § 502(a)(1)(B).

Turning to § 502(a)(3), the Plaintiffs concede that monetary relief is not available under that section. [Doc. 64 at 21.]  Moreover, although they generally seek "such other relief as just and proper," the Plaintiffs do not request any specific form of equitable relief.  Addressing the question in *West*, the Sixth Circuit held that such a generalized request for relief was "insufficient to assert a proper equitable claim under § 502(a)(3) where the heart of the plaintiff's prayer for relief was a request for recovery of additional lump sum benefits." 484 F.3d at 403 (quoting *Crosby v. Bowater, Inc. Ret. Plan*, 382 F.3d 587, 589 (6th Cir. 2004).

In this case, the heart of the Plaintiffs' request for relief is an award of "the accrued benefits under the AE Plan that have bene improperly denied by Defendants." [Doc. 27 at ¶90.]  Because this type of relief goes beyond equity, the Court finds that the Plaintiffs are not entitled to any monetary award under § 502(3)(a).

### III. Prejudgment Interest

Having found that ERISA § 502(a)(1)(B) provides monetary damages to the Plaintiffs, the

-6-

Case No. 5:06-cv-1876
Gwin, J.

Court further finds that the Plaintiffs are entitled to prejudgment interest on that amount.

Although ERISA does not require a prejudgment interest award, the Sixth Circuit has long recognized that the district court may make such an award "at its discretion in accordance with general equitable principles." *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 810 (6th Cir. 2002); *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998). Moreover, beneficiaries generally have a right to prejudgment interest on improperly withheld benefits. *See Wells v. United States Steel & Carnegie Pension Fund*, 76 F.3d 731, 737 (6th Cir. 1996).

In this case, after determining that the AE Plan was not a top-hat plan, the Court determined that the Defendants violated 29 U.S.C. § 1053 by only conditionally vesting plan benefits and doing so outside the seven year mandatory vesting schedule provided by ERISA. [Doc. 42 at 23.] Further, the Court found that the Defendants improperly amended the plan under 29 U.S.C. § 1082(c)(8)(C). [*Id.*]

Although the Defendants argue that they administered the AE Plan as a top-hat plan in good faith and that the Plaintiffs forfeited their benefits by their own actions, the Court nevertheless finds that prejudgment interest is merited in this case. Simply, had the Defendants not improperly administered the AE Plan, the Plaintiffs would have been entitled to a greater and at least partially-vested benefit. Thus, the Defendants' improper plan administration has denied the Plaintiffs the use of their vested benefits, and the present value of the benefits received today is less than the present value of benefits received years ago.

Accordingly, the Court awards the Plaintiffs prejudgment interest, calculated using the federal post-judgment interest rate as set forth in 28 U.S.C. § 1961(a), and compounded annually.

Case No. 5:06-cv-1876
Gwin, J.

## IV. Attorney's Fees

In addition to the above issues jointly submitted to the Court, the Plaintiffs also moved for an award of approximately $245,000 in attorney's fees. [Doc. 66.] The Defendants say that an award of attorney's fees is not justified in this case and that at least a portion of the fees the Plaintiffs seek is improper. [Doc. 68.]

Under 29 U.S.C. 1132(g), a court, in its discretion, "may allow a reasonable attorney's fee and costs of action to either party." As the Defendants thus concede, "it is within this Court's discretion to award reasonable attorney's fees and costs." [Doc. 68 at 10.] (emphasis omitted).

In determining whether to award fees, this Court is guided by five factors: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006). Because no single factor is determinative, the court must consider each factor before exercising its discretion. *Id.* at 643.

*A. Opposing Party's Culpability or Bad Faith*

This factor weighs in favor of an award of attorney's fees. Although an arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith, *Moon*, 461 F.3d at 643, it is evidence that the district court may consider. In holding that the Defendants violated ERISA's vesting provisions, this Court found that the Review Committee's decision "gave only a cursory and an embarrassingly off-topic consideration" of whether the AE Plan was in fact a top-hat

-8-

Case No. 5:06-cv-1876
Gwin, J.

plan. [Doc. 42 at 15-16.]  In fact, the Committee "barely touched" the relevant issues in making its determination. [*Id.* at 16.]  Ultimately, this Court found the Committee's failure to answer these central questions "telling." [*Id.* at 17.]

Given the Defendants' cursory and conclusory treatment of the Plaintiffs' challenges to the top-hat plan issue, this Court finds that the Defendants acted with some degree of culpability in finding that the participants' benefits were not subject to ERISA's vesting requirements. Accordingly, this factor weights in favor of an award of attorney's fees.

*B. Opposing Party's Ability to Satisfy and Award*

The Defendants make no challenge that they, a large brokerage firm, would be unable to satisfy a fee award. [Doc. 68 at 13.]  As the Sixth Circuit has held, a defendant's ability to satisfy the requested attorney's fees "favors plaintiff." *Moon*, 461 F.3d at 644.  Accordingly, this factor weighs in favor of an award of attorney's fees.

*C. Deterrent Effect of Award on Other Persons Under Similar Circumstances*

Under this factor, the Court finds that a fee award would create a beneficial deterrent effect on other parties in similar circumstances.  Although the Defendants protest that there can be no deterrence here, as the AE Plan has been terminated and the eligible participants paid in full, this factor addresses whether a fee award will deter "other [companies] under similar circumstances." *Moon*, 461 F.3d at 645 (emphasis added).

In this case, deterrence weighs in favor of an award of attorney's fees.  Specifically, this Court has found that although the Defendants branded the AE Plan a top-hat plan and somewhat conclusively administered it as such, the Plan was actually subject to ERISA's vesting requirements. As discussed above, when considering the AE Plan's nature, the Defendants "gave no consideration

-9-

Case No. 5:06-cv-1876
Gwin, J.

of the facts relevant to a decision on the top-hat issue.  Instead, the Committee's decision simply quotes the stated purpose of the Plan . . .." [Doc. 42 at 22.]

A fee award in this case would serve as a deterrent to other companies who would similarly brand a plan and conclusively administer it to evade many of ERISA's employee protections.  Such an award puts companies on notice that if they desire to create exempt benefit plans, they must do so carefully and deliberately.

Accordingly, this factor weighs in favor of an award of attorney's fees.

*D. Conferring a Common Benefit on All ERISA Plan Beneficiaries*

Although the Plaintiffs here sought only individualized relief, the success of their legal arguments relative to whether the AE Plan was subject to ERISA's vesting and other requirements provides benefit to all Plan participants.  Specifically, in successfully arguing that the AE Plan is not a top-hat plan, the Plaintiffs have obtained a judicial determination that the AE Plan is subject to ERISA's vesting requirements, that the Plan administrators owe fiduciary duties to all participants, and that the Defendants improperly amended the Plan.

Accordingly, this factor weighs in favor of an award of attorney's fees.

*E. Relative Merit of the Parties' Positions*

This final factor weighs against an award of attorney's fees.  Although the Court ultimately ruled in favor of the Plaintiffs on the nature of the AE Plan, the Defendants prevailed on several of the Plaintiffs' claims.  Moreover, the Court finds that none of the Defendants' arguments were wholly without merit.

*F. Conclusion*

Because all but one of the factors weigh in favor of a fee award in this case, the Court finds

Case No. 5:06-cv-1876
Gwin, J.

that the Plaintiffs are entitled to an award of attorney's fees.  Under the lodestar approach, the Plaintiffs request $245,040 in fees for the work of three attorneys: William Zavarello (139.5 hours at $350 hourly), Matthew Koch (337.3 hours at $300 hourly), and Janet Stich (380.1 hours at $250 hourly). [Doc. 66 at 4.]  The Defendants challenge the numbers submitted, claiming that many of the hours are uncompensable because they were spent pursuing state law claims, billed while seeking administrative remedies, spent working on other litigation, constitute excessive and duplicative work, include post-judgment activity, and lack sufficient detail.

The Court finds two of these challenges well taken.  First, "ERISA does not authorize recovery of attorneys' fees for work performed during the administration exhaustion phase of a benefits proceeding." *Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 456 (6th Cir. 2000).  In reviewing the itemized hours submissions made by counsel, the Court finds that 4.5 of Mr. Zavarello's hours, 33 of Mr. Koch's hours, and 22.8 of Ms. Stich's hours were spent during and on matters related to the administrative exhaustion phase. [Doc. 66-1, 66-2, 66-3.]  Accordingly, the Court deducts those hours from the totals claimed by counsel.

Second, the Plaintiffs are not entitled to attorney's fees for work performed in connection with unrelated matters or cases.  In their fee request, counsel submitted hours for time spent on Plaintiff Harry Canavesi and Plaintiff Marilyn Neckes' unrelated state court litigation against the Defendants.  Moreover, in their fee application, the Plaintiffs fail to distinguish between hours spent on that litigation and hours spent on the instant litigation.  The Court accordingly deducts hours spent pursuing unrelated litigation from the fee request made: 40 of Mr. Koch's hours and 2 of Ms. Stich's hours.  In addition, counsel submitted hours spent on the pending appeal of this case.  The Court subtracts those hours from the submission: 1.6 of Mr. Zavarello's hours, 6.1 of Mr. Koch's hours,

Case No. 5:06-cv-1876
Gwin, J.

and 11.4 of Ms. Stich's hours.

Subtracting out the uncompensable hours submitted by counsel, the Court finds the following

as the proper fee calculation:

Mr. Zavarello: 133.4 hours at $350 per hour = $46,690

Mr. Koch: 258.2 hours at $300 per hour = $77,460

Ms. Stich: 343.9 hours at $250 per hour = $85,975

Accordingly, the Court awards attorneys fees to the Plaintiffs in the amount of $210,125.

IT IS SO ORDERED.


Dated: January 15, 2010                          s/        *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE